IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARIA TOWERY                                                              PLAINTIFF

v.                              No. 3:18-cv-44-DPM

MISSISSIPPI COUNTY ARKANSAS
ECONOMIC OPPORTUNITY
COMMISSION, INC.                                                         DEFENDANT

MEMORANDUM OPINION AND ORDER

For almost twenty years, Maria Towery was the Mississippi County Arkansas Economic Opportunity Commission's healthy start program director. Her supervisor for nearly all that time was executive director Samuel Scruggs, who she says never disciplined her. *Doc. 28-1 at* 23. Scruggs died in 2017. In his place, the Commission appointed interim co-directors: Priscilla Johnson, who had been Scruggs's executive assistant, and Lavelle Wells, who was the finance officer. Towery says her working relationship with Wells had often been difficult, but Towery and Johnson had a good relationship. About two months after Scruggs died, Towery was fired. Johnson and Wells say their new roles were authorized by a succession plan that Scruggs proposed and the Commission approved in 2015. Towery questions the plan's legitimacy because it lacks Scruggs's signature. But she agrees that Johnson became her supervisor after Scruggs's death.

Towery says her troubles began when she asked to see a letter from Scruggs about the succession plan. Shortly thereafter, she and

Johnson had an argument in which Towery used foul language. The Commission suspended Towery because it saw her behavior during that incident as disrespectful towards Johnson; Towery denies that it was. While Towery was suspended, some of the employees she supervised filed complaints with management about her, which the Commission says it substantiated. Because of those complaints, the Commission put Towery on probation for ninety days after her suspension.

Around this time, Johnson asked Towery and her peers to share their program passwords, which were needed to submit reports to the federal government and other documents. The Commission says it requested these passwords so it could keep operating its programs in the event of unforeseen absences. Towery feared that, if she shared her program password, the Commission would alter her reports. Scruggs never asked her for any password. Towery testified that her project director in D.C. told her by email "no one can request my password, that it was up to me if I want to do that or not." *Doc. 28-1 at 18*. Here's the project director's email to Towery:

> Unfortunately, I can't give you authorization to give the HRSA ebh password to Lavelle Wells and Priscilla Johnson. Deciding to give them permission to access EHB has to be something that you have to decide. It has always been at the programs discretion (mostly PD's choice) who has access to EHB.

*Doc. 28-1 at 102.* Towery was a program director, which PD likely stands for. Towery agrees that she never intended to share her program password, and refused to do so multiple times when asked. This is when Towery was fired. Her termination letter gave one reason: her failure to comply with requests to provide her program password. At deposition, Johnson gave two reasons: Towery's refusals, plus her behavior that Johnson and the Commission found disrespectful.

Towery brought many claims; most were dismissed. *Doc. 21.* Pending are her claims for race/national origin discrimination, rooted in Towery's Hispanic ethnicity, and Title VII retaliation. The Commission seeks summary judgment on both. The Court views the material facts, where genuinely disputed, in the light most favorable to Towery. *Smith-Bunge v. Wisconsin Central, Ltd.*, 946 F.3d 420, 424 (8th Cir. 2019). Only Towery's 2017 suspension, probation, and termination occurred within one hundred eighty days before her first EEOC charge, so the Court considers only those actions. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). Towery claims those actions constituted discrimination, and her termination constituted retaliation, too. In her response brief, she comes close to abandoning the retaliation claim. But it's murky, so the Court will address both claims on their merits.

On discrimination, there's no genuine issue for trial. The discrimination she alleges is indirect, and the Commission offers nondiscriminatory reasons for its actions. *Bone v. G4S Youth Services,*

*LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Assuming a *prima facie* case, Towery hasn't provided sufficient evidence that the Commission's reasons were a pretext for discrimination. She offers no adequate comparators, shifting rationales, or lack of factual basis. Towery's proposed comparators don't meet the rigorous standard. None of them had the same supervisor, were subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *Johnson v. Securitas Security Services USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014). Johnson's additional reason for Towery's firing—disrespect—was not a substantial change in rationale, given that it was the Commission's reason for Towery's suspension. *Ibid.* Although she disputes the tone of her encounter with Johnson, Towery acknowledges the core fact about her password: she refused to give it to her boss. Towery's concern that the Commission might edit her reports doesn't eliminate her refusal to do what her boss directed. The D.C. project director's email doesn't say that Towery had the authority to refuse her supervisor's request for the password. And whether it was appropriate for the Commission to ask Towery to share her password does not affect the pretext analysis. The Commission asked all its program directors to do so.

Towery points to Miriam Petersen, another Hispanic employee fired by the Commission. Towery doesn't spell out how Petersen's firing furthers her own case. Petersen can't be a comparator because she and Towery are in the same protected group. *Johnson*, 769 F.3d

-4-

at 613.  As best the Court can tell, Towery argues that Petersen's firing, combined with Towery's, raises a reasonable inference of discriminatory animus on the Commission's part against its Hispanic employees.  *Johnson*, 769 F.3d at 611.  Towery believes the Commission fired Petersen for contacting someone in D.C.  The Commission responds that it fired her because of poor performance, and it had many Hispanic employees.  The thin record about Petersen does not raise a reasonable inference of discriminatory animus, and it doesn't create a jury question on whether the Commission's reasons for firing Towery were pretextual.  There is therefore no genuine issue for trial on discrimination.  *Bedford v. Doe*, 880 F.3d 993, 997 (8th Cir. 2018).

Towery also brought a state law discrimination claim.  It echoes her claim under federal law.  And it fails as a matter of law, too.  *Shultz v. Buchanan*, 829 F.3d 943, 951 (8th Cir. 2016).

There's no issue for trial on retaliation, either.  Towery was fired two weeks after she filed her first EEOC charge.  She claims she was fired in retaliation for that charge.  The timing favors Towery.  Here again, though, the Commission has offered legitimate, nonretaliatory reasons for its action.  And, assuming a *prima facie* case of retaliation, Towery hasn't provided sufficient evidence that the Commission's reasons were pretextual.  *Lacey v. Nome, Inc.*, 932 F.3d 657, 660 (8th Cir. 2019).

\* \* \*

The Commission's motion for summary judgment, *Doc. 28*, is granted. The Court will dismiss Towery's remaining federal claims and her state claim with prejudice.

So Ordered.

*/s/ DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

6 March 2020